UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

RENE A.,

                    Plaintiff,

v.

KILOLO KIJAKAZI, Commissioner of
Social Security,

                    Defendant.

Case No.:  3:21-cv-00613-AHG

**ORDER RESOLVING JOINT
MOTION FOR JUDICIAL REVIEW
AND AFFIRMING DECISION OF
COMMISSIONER**

**[ECF No. 17]**

On May 6, 2022, Rene A. ("Plaintiff") and Kilolo Kijakazi, the Acting Commissioner of Social Security, ("Commissioner" or "Defendant") filed a Joint Motion for Judicial Review of Final Decision of the Commissioner of Social Security ("Joint Motion") pursuant to 42 U.S.C. § 405(g), regarding Plaintiff's request for judicial review of a decision by the Commissioner denying Plaintiff's application for a period of disability and disability insurance benefits. ECF No. 17.

After a thorough review of the parties' submissions, the administrative record, and applicable law, the Court **DENIES** the joint motion and **AFFIRMS** the Commissioner's denial of disability insurance benefits.

## I.   **PROCEDURAL BACKGROUND**

Plaintiff was born in 1961, making him an individual "closely approaching advanced age" on his alleged disability onset date. ECF No. 9, Certified Administrative Record ("AR") 140. His past relevant work was as a data processor and information security specialist. AR 149.

On March 31, 2019, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning February 16, 2016. AR 151–52, 227–29. Plaintiff's application was denied on July 5, 2019. AR 166–70. On August 30, 2019, Plaintiff requested reconsideration. AR 172. Plaintiff's claims were denied at the reconsideration level on January 13, 2020. AR 173–74. Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ") on March 13, 2020, and a hearing was held on October 1, 2020. AR 118, 177–78.

On October 21, 2020, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled under sections 216(i) or 223(d) of the Social Security Act, and accordingly denying disability insurance benefits. AR 26–46. The Appeals Council affirmed the ALJ's decision, finding that the additional medical evidence submitted did not show "a reasonable probability that it would change the outcome of the decision," AR 1–2, making the ALJ's opinion the final decision of the Commissioner. *See* 42 U.S.C. § 405(h).

On April 8, 2021, Plaintiff timely commenced this appeal, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). ECF No. 1. The Commissioner filed the Administrative Record on October 13, 2021. ECF No. 9. Pursuant to the Court's briefing schedule (*see* ECF Nos. 11, 15), the parties timely filed their Joint Motion on May 6, 2022. ECF No. 17.

/ /

/ /

/ /

/ /

/ /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.   SUMMARY OF ALJ'S FINDINGS

### A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id.*; *see also* 20 C.F.R. § 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. *Lounsberry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform his past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc.

3:21-cv-00613-AHG

Sec. Ruling ("SSR")[1] 96-9p, 1996 WL 374184, at *1 (July 2, 1996). An RFC reflects the most a claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1); *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of his impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161–62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the vocational expert is incomplete and, therefore, the ALJ's reliance on the vocational expert's answers is improper).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant

---

[1] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

work, the claimant is not disabled and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that he is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy that the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1)–(2); *see also* 20 C.F.R. § 404.1520(g)(1). The ALJ usually meets this burden either (1) by the testimony of a vocational expert who assesses the employment potential of a hypothetical individual with all of the claimant's physical and mental limitations that are supported by the record, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. *Lounsburry*, 468 F.3d at 1114–15; *Hill*, 698 F.3d at 1162. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Tackett*, 180 F.3d at 1099.

## B.   The ALJ's Application of the Five-Step Process in this Case

The ALJ determined that Plaintiff had sufficient quarters of coverage for the purpose of his disability claim to remain insured through December 31, 2021. AR 31. Accordingly, the relevant period for the disability analysis is the alleged disability onset date of February 16, 2016, through October 21, 2020, the date of the ALJ's decision.[2]

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 16, 2016. AR 31. The ALJ concluded that severance pay received after the alleged onset date "does not rise to the level of substantial

---

[2] Plaintiff submitted additional medical evidence to the Appeals Council, including records from the Department of Veterans Affairs dated October 26, 2020, through January 21, 2021. AR 2. The Court agrees with the Appeals Council that these records are not related to the period at issue.

5

gainful activity," and similarly found that Plaintiff's 2018-2019 military retirement pay is "not substantial gainful activity." AR 31, 128. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine, carpal tunnel syndrome ("CTS") and osteoarthritis ("OA") of the bilateral hands, multilevel degenerative disc disease ("DDD") with scoliosis and diffuse idiopathic skeletal hyperostosis ("DISH") of the thoracolumbar spine, and bilateral sacroiliac joint degenerative joint disease. AR 32. The ALJ found that these impairments significantly limit Plaintiff's ability to perform basic work activities. AR 32. The ALJ found that Plaintiff has the following non-severe medically determinable impairments, which "cause only minimal abnormalities that would have no more than a minimal effect on his ability to work[:]" pre-diabetes, hyperlipidemia, dermatitis, obstructive sleep apnea, tennis elbow/lateral epicondylitis, right knee osteoarthritis, Achilles tendinitis of the left leg, and tension headaches. AR 32–34. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 34.

Before proceeding to step four, the ALJ addressed Plaintiff's RFC. The ALJ determined that Plaintiff has the RFC to perform light work as defined by 20 C.F.R. § 404.1567(b) with the following limitations: "occasionally reach overhead bilaterally; never climb ladders/ropes/scaffolds, or crawl; occasionally climb ramps/stairs, balance, stoop, kneel, and crouch; frequently handle and finger with the bilateral hands, but cannot perform forceful gripping, grasping, or torquing; and, he must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery." AR 36. The ALJ considered Plaintiff's subjective statements and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence[.]" AR 34–35. The ALJ also found that Plaintiff's activities of daily living are inconsistent with his statements regarding the limiting effects of his symptoms, since he was able to complete his

Bachelor's degree in computer science with a 3.98-4.0 GPA after his alleged disability onset date. AR 40. The ALJ also highlighted Dr. Glenn Balfour's consistent recommendations of "conservative care" including wrist splints, home exercise programs ("HEP"), stretches, a transcutaneous electrical nerve stimulation ("TENS") unit, acupuncture, and over the counter Non-Steroidal Anti-Inflammatory Drugs ("NSAIDs," such as Motrin), and VA providers' similar conservative recommendations for compression gloves and topical lidocaine. AR 37–38. The ALJ found the opinion of orthopedic consultive examiner Dr. Easley to be "generally, but not entirely, persuasive," noting that the portion of his opinion which stated that "the claimant can occasionally grip, grasp, and torque with the bilateral hands" was less persuasive because it was inconsistent with physical examination findings and longitudinal medical evidence. AR 40. The ALJ found the opinion of state agency medical consultants Dr. Michelotti and Dr. Laiken to be persuasive and consistent with the objective medical evidence. AR 41. The ALJ agreed with their opinions that Plaintiff "can perform light work, except he can: occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders/ropes/scaffolds; frequently handle and finger with the bilateral upper extremities; and, avoid concentrated exposure to hazards" and included an additional restriction in Plaintiff's RFC "limiting him to no forceful gripping, grasping, and torquing, which the [ALJ] finds is not inconsistent with—but rather more detailed than—these opinions." AR 41. The ALJ "recognize[d] that the claimant has degenerative disc disease of the cervical spine, CTS and OA of the bilateral hands, multilevel DDD with scoliosis and DISH of the thoracolumbar spine, and bilateral SI joint DJD, and has experienced some discomfort due to these conditions; however, the objective medical records indicate that the claimant has been treated for these conditions and has responded to this treatment." AR 41.

At step four, the ALJ compared the RFC assessed to the demands of Plaintiff's past relevant work as an information security specialist, Dictionary of Occupational Titles ("DOT") 033.162-010, which is a sedentary and skilled, at Specific Vocational Preparation ("SVP") 8, occupation. AR 41. Based on the testimony of the Vocational Expert and

Plaintiff's RFC, the ALJ concluded that Plaintiff "is able to perform his past relevant work as actually performed by the claimant[3] and as generally performed in the national economy." AR 42. The ALJ accepted the Vocational Expert's testimony, although reaching overhead and forceful gripping, grasping, or torquing were not addressed in the DOT, because the Vocational Expert's "testimony was based on his training, education, and experience in the field of vocational rehabilitation[.]" AR 42. Therefore, the ALJ determined that Plaintiff was not disabled at step four of the analysis and did not proceed to step five. AR 42.

The issues presented by Plaintiff for appeal are (1) whether the ALJ's step four finding is supported by substantial evidence, and (2) whether the ALJ properly considered Plaintiff's testimony about his hand pain and limitations. ECF No. 17 at 4.

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority[4] to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

The Court's role is to determine whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Holohan*, 246 F.3d at 1201. If so, the Court must affirm.

---

[3] Upon review of the hearing transcript, the Court notes that the Vocational Expert only referred to the work as generally performed, not as actually performed by Plaintiff. AR 135-36. However, this misstatement by the ALJ does not change the analysis. The Ninth Circuit has explained that "we have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (emphasis in original).

[4] The parties consented to proceed before a Magistrate Judge on April 16, 2021. ECF No. 5; General Order 707 (S.D. Cal. Apr. 12, 2019).

3:21-cv-00613-AHG

"Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). In evaluating whether the Commissioner's decision is supported by substantial evidence on appeal, the Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, as well as resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). Even if the decision was based on legal error, however, a court may not reverse an ALJ's decision if the error is harmless. Harmless error "exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.   WHETHER THE ALJ'S STEP FOUR FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE

First, Plaintiff argues that the ALJ's step four finding is not supported by substantial evidence. ECF No. 17 at 4. In doing so, Plaintiff poses two questions: whether the ALJ erred in failing to account for rejecting medical evidence when formulating the RFC, and whether the ALJ erred at step four in his questions to the Vocational Expert.

### A.   Parties' Positions

Plaintiff contends that the ALJ erred by not including a limitation to about 6 hours of sitting in the RFC, since Dr. Easley, Dr. Michelotti, and Dr. Laiken all concluded that

Plaintiff can perform a range of light work, but limited him to about 6 hours of sitting. ECF No. 17 at 5 (citing AR 147, 160, 957). The ALJ found their opinions persuasive generally, although the ALJ found the portions of Dr. Easley's opinion regarding Plaintiff's hands to be less persuasive. AR 40-41. Plaintiff argues that the RFC therefore conflicts with the medical evidence because it does not include a 6-hour sitting limitation. ECF No. 17 at 6. Plaintiff argues that because of the conflict, the ALJ was required to explain why he did not include that particular restriction in the RFC. *Id*. Plaintiff also argues that the Vocational Expert's testimony has no value as a result, because the hypothetical did not reflect a six-hour sitting limitation. *Id*. at 7.

Plaintiff also takes issue with the RFC's limitation to frequent fingering, 2.7 to 5.28 hours in an eight-hour day. *Id.* at 8–9. Plaintiff argues his past relevant work as actually performed required him to sit for 7 hours in an eight-hour day, and type or handle small objects for 7 hours in an eight-hour day. *Id*. Plaintiff therefore contends that the ALJ erred in finding that he could perform past work as actually performed. *Id*.

Plaintiff also contends that the ALJ erred in finding that he could perform past work as generally performed, because the DOT classifies his past occupation as sedentary, and sedentary work requires sitting for 6 to 8 hours, with 6 hours setting a minimum. *Id*. at 9. Plaintiff argues the Court should instead utilize the Occupational Requirements Survey ("ORS"), which notes that "at least 90% of [jobs related to Plaintiff's past relevant work] require more than six hours of sitting," and thus supports a conclusion that Plaintiff could not "perform his past relevant sedentary work as generally performed when limited to six hours of sitting." *Id*. at 9.

Defendant argues that the evidence in the record does not require the ALJ to include an explicit restriction limiting Plaintiff to six hours of sitting per workday. *Id*. at 23. In the alternative, Defendant argues that Plaintiff's RFC already includes a limitation to sitting for six hours since Plaintiff was limited to light work with additional limitations, which meant that Plaintiff could perform sedentary work as well. *Id*. at 17. Defendant argues that by limiting Plaintiff to light or sedentary work, which require a seated position for

approximately 6 hours of an 8-hour work day, the ALJ has implicitly incorporated a 6-hour sitting limitation. *Id*. at 18–19.

Defendant concedes that the Vocational Expert did not provide testimony regarding Plaintiff's ability to perform past relevant work as actually performed. *Id*. at 21 n.3 (citing AR 135–39). Defendant contends, however, that this was harmless error because the record supports that Plaintiff can perform the position as generally performed. ECF No. 17 at 21 n.3.

## B.    Legal Standard

"A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations." *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545). In determining a claimant's RFC, the ALJ considers all relevant evidence, including RFC assessments[5] made by consultative examiners, State Agency physicians, and medical experts. *See* 20 C.F.R. § 404.1545(a)(3); *see also* 20 C.F.R. § 404.1513(c). The ALJ is responsible for translating a claimant's condition and limitations into an RFC that "adequately captures restrictions" to the claimant's ability to work. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). An RFC is defective if it fails to take a claimant's limitations into account. *Valentine*, 574 F.3d at 690. When a claimant has moderate limitations as diagnosed by a physician and the ALJ implicitly rejects those moderate limitations in the formulation of

---

[5] With respect to the ALJ's consideration of medical opinion evidence, the Social Security Administration's revised regulations for considering medical opinions and prior administrative findings, found at 20 C.F.R. § 404.1520c(c)(1)–(c)(5), apply because Plaintiff applied for disability after March 27, 2017. AR 151–52, 227–29 (filed on March 31, 2019). The Ninth Circuit has recognized that these new regulations upend the longstanding treating physician rule. *Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). Rather than attributing deference to a medical opinion based on the nature of the relationship between the physician and the claimant, an ALJ must evaluate the "persuasiveness" of any medical opinions. *Id.* at 792. An ALJ must explain his analysis of a medical opinion as persuasive or not persuasive. *Id.* ("The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions'") (quoting 20 C.F.R. § 404.1520c(b)).

the claimant's RFC, the ALJ must explicitly explain why he rejected the limitations. *Devery v. Colvin*, No. CV 15-8503-RAO, 2016 WL 3452487, at \*5 (C.D. Cal. June 22, 2016) (collecting cases).

However, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Yolanda R. v. Kijakazi*, No. EDCV-21-405-KS, 2022 U.S. Dist. LEXIS 135465, at \*9 (C.D. Cal. July 29, 2022) (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)). "An ALJ's RFC assessment may sufficiently account for a physician's opinion regarding limitations without using the same language as the physician." *Precious A.J. v. Kijakazi*, No. EDCV-21-242-KS, 2022 U.S. Dist. LEXIS 136854, at \*23 (C.D. Cal. Aug. 1, 2022); *see, e.g.*, *McIntosh v. Colvin*, No. CV-16-963-JAH (BGS), 2018 WL 1101102, at \*5 (S.D. Cal. Feb. 26, 2018) ("There is no requirement that the RFC recite medical opinions verbatim, rather the ALJ is responsible for translating and incorporating medical findings into a succinct RFC."); *Lyons v. Colvin*, No. CV-14-605-DMG-KK, 2015 WL 9701184, at \*24 (C.D. Cal. June 11, 2015) ("While an ALJ's RFC finding need not be identical to credible medical opinions, it does need to be consistent with them.").

## C. Substantial Evidence Supports there being No Six-Hour Sitting Limitation in the RFC

Three physicians provided RFC assessments. On July 3, 2019, Dr. Michelotti opined, among other limitations, that Plaintiff could "sit (with normal breaks) for a total of [a]bout 6 hours in an 8-hour workday." AR 147. Although Plaintiff appealed to Dr. Laiken that there had been a change to his medical conditions in July 2019, including "walking only 15-20min then needs a break, cannot sit longer than 1 hour, very uncomfortable," on January 3, 2020, Dr. Laiken considered all the evidence and opined that Plaintiff could "sit (with normal breaks) for a total of [a]bout 6 hours in an 8-hour workday." AR 158, 160. On October 31, 2021, Dr. Easley examined Plaintiff, noting that he "gets into the chair without difficulty and gets out of the chair without difficulty," and opined that Plaintiff "can stand and walk for 6 hours in an eight-hour workday. He can sit for 6 hours in an eight

hour workday." AR 956–57. None of the doctors explained their opinions regarding the limitation of sitting (or standing) for 6 hours during an 8-hour workday, or provided specific reasons or medical evidence why Plaintiff would have a difficult time sitting (or standing) for longer than 6 hours.

Further, the Court has thoroughly examined the 1,050-page record, which only includes four allegations by Plaintiff regarding his ability to sit and five notations from doctors upon examination of Plaintiff regarding his ability to walk. *See* AR 484 (on April 30, 2015, Plaintiff complained of "recurrent low back pain with prolonged sitting" with a pain level of 3/10. Upon examination, Dr. Samuel Abarte found "no neck pain" and "no limb weakness, no tingling, and no numbness," and Plaintiff's back had "no swelling," "no induration," "no tenderness to palpation," "no muscle spasm," and "no costrovertebral angle tenderness." Plaintiff's lumbosacral spine "was normal," "exhibited no swelling," "no ecchymosis," and "no asymmetry," and "lumbosacral spine pain was not elicited by motion."); AR 267 (in Plaintiff's September 9, 2019, Disability Appeal Report, completed by Plaintiff's counsel, he reported that as of July 2019, he could "walk[] only 15-20 min then needs a break, cannot sit longer th[a]n 1 hour, very uncomfortable[.]"); AR 277 (in Plaintiff's March 17, 2020, Disability Appeal Report, completed by Plaintiff's counsel, he reported that as of January 2020, Plaintiff "has to be constantly shifting positions while sitting, standing, or laying down to try and find some comfort."); AR 389 (on April 8, 2019, Dr. Abarte assessed that Plaintiff did not "have problems walking or balanc[ing]"); AR 746 (in Plaintiff's June 18, 2018, VA Disability Benefits Examination, Dr. Eric Venn-Watson assessed that "patient has mild impairment activities such as prolonged standing and walking"); AR 923 (on April 3, 2019, Plaintiff reported his back pain was "aggrav[ated] by lifting, bending, twisting, prolonged standing or walking," and Dr. Balfour noted that Plaintiff is "able to walk [for] 20 mins before sitting."); AR 938 (on June 5, 2019, Dr. Balfour noted that Plaintiff is "able to walk 20 mins before sitting down."); AR 942 (on September 12, 2019, Plaintiff reported his back pain was "aggravated by lifting, thrusting, bending, prolonged standing or sitting, or even walking," and Dr. Balfour noted that

Plaintiff is "able to walk 30 mins before sitting down" and "has benefited from daily HEP and stretches[,] acupuncture, chiropractor, and PT [physical therapy]."). No notations in the record, aside from Dr. Michelotti's, Dr. Laiken's, and Dr. Easley's opinions, reflect any objective medical evidence regarding Plaintiff's ability to sit for certain periods of time.

Additionally, there is substantial evidence in the record that Plaintiff's back pain would not warrant such a strict six-hour-maximum sitting requirement, as his pain was being managed effectively. Plaintiff reported to medical providers on several occasions that his overall health was good, and his activities were not limited by health issues. *E.g.*, AR 402, 417, 461-62, 475–76, 484–85, 598, 644. Plaintiff played basketball and walked for exercise regularly. AR 439–40, 445, 448–49, 475–76, 621–22, 630. Plaintiff's physical examinations revealed normal findings. AR 388–89, 441, 623. Plaintiff's condition improved with conservative treatment. AR 923, 925, 938, 942, 944, 962–66, 1037. Plaintiff frequently rated his pain level at 3/10 or lower. AR 388, 430–31, 461–62, 484–85, 569, 612. There is not substantial evidence in the record to demonstrate that Plaintiff cannot sit for longer than 6 hours; as the ALJ discussed in detail in his opinion, Plaintiff's medical records show improvement, not regression. AR 36-40.

The ALJ is not required to accept every aspect verbatim of a doctor's RFC assessment opinion, even if he finds the opinion persuasive. *Precious A.J.*, 2022 U.S. Dist. LEXIS 136854, at *23; *McIntosh*, 2018 WL 1101102, at *5. Therefore, the Court finds that the Plaintiff's RFC, which does not include an explicit six-hour sitting limitation, is supported by substantial evidence.

### D.   Even if it was Error to not Explicitly Include a Six-Hour Sitting Limitation in the RFC, the Error was Harmless

Even if it was error for the ALJ to not include an explicit six-hour sitting limitation in the RFC, the error would be harmless. First, the doctors' opinions limiting Plaintiff to sitting "about" six hours per workday are compatible with the assigned restriction to light work, which includes a capacity for sedentary work. *See* 20 C.F.R. § 404.1567(b). Thus,

the medical opinions the ALJ found persuasive were reasonably consistent with and incorporated into the assigned RFC. *See Flores v. Saul*, No. 1:19cv69-SKO, 2020 WL 3893392, at *7 (E.D. Cal. July 10, 2020) ("the ALJ may incorporate the opinions of a physician by assessing RFC limitations entirely consistent with, but not identical to limitations assessed by the physician.") (internal quotation marks omitted).

Second, any error is harmless because Plaintiff can perform his past relevant work even if he is limited to sitting for six hours in an eight-hour workday. The ALJ determined the following RFC:

> [T]he claimant can perform light work as defined in 20 CFR § 404.1567(b), occasionally reach overhead bilaterally; never climb ladders/ropes/scaffolds, or crawl; occasionally climb ramps/stairs, balance, stoop, kneel, and crouch; frequently handle and finger with the bilateral hands, but cannot perform forceful gripping, grasping, or torqueing [sic]; and, he must avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery.

AR 35. If a claimant can do light work, he "can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long[6] periods of time." 20 C.F.R. § 404.1567(b). Plaintiff's prior relevant work was as an information security specialist. AR 42; DOT 033.162-010, 1991 WL 646561 (1991) (computer security specialist). According to the DOT, Plaintiff's prior relevant work as an information security specialist is categorized as an exertionally sedentary position:

> Sedentary Work - Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

---

[6] Here, Plaintiff argues that he should be "limited to about six hours of sitting," which is not an "inability to sit for long periods of time." ECF No. 17 at 5 (citing AR 147, 160, 957).

*Id.*; *see also* DOT App'x C, 1991 WL 688702 (same definition). The DOT was last updated in 1991, but in 1996, SSR 96-9p clarified:

> Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. <u>Sitting would generally total about 6 hours of an 8-hour workday</u>. … In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals. If an individual is unable to sit for a total of 6 hours in an 8-hour work day, the unskilled sedentary occupational base will be eroded.

SSR 96-9p, 1996 WL 374185, at *3, *6 (1996) (emphasis added).

Although SSR 96-9p says sitting would <u>generally</u> total six hours, Plaintiff cites *Mitzi D. v. Saul* for the proposition that sedentary work is not limited to a <u>maximum</u> of six hours of sitting, which he paints as the fatal flaw. No. SACV-18-1065-DFM, 2019 WL 8112507, at *2 (C.D. Cal. Dec. 13, 2019). The court in *Mitzi* reiterated that "<u>approximately</u> six hours a day does not mean a <u>maximum</u> of six hours a day." *Id.* (emphasis in original). The Court notes that, here, two of the three medical opinions Plaintiff argues the ALJ rejected state that Plaintiff can "sit (with normal breaks) for a total of <u>about</u> 6 hours in an 8-hour workday." AR 147, 160 (emphasis added). Using Plaintiff's reasoning, sitting <u>about</u> six hours does not mean sitting for a <u>maximum</u> of six hours, therefore, Plaintiff's RFC and past relevant work are consistent with Dr. Laiken's and Dr. Michelotti's opinions.

Further, Plaintiff's reliance on *Mitzi* is entirely misplaced. In that opinion, the court in fact ***denied*** reconsideration of its previous opinion in which the court found that two state agency physicians' proposed limitations of standing, walking, or sitting to 6 hours in an 8-hour workday were consistent with an RFC limiting the plaintiff to light work, since light work generally requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *Mitzi D. v. Saul*, No. SACV-18-01065-DFM, 2019 WL

4415100, at *1 (C.D. Cal. Sept. 16, 2019) (quoting SSR 83-10, 1983 WL 31251, at *6 (1983)). Therefore, the *Mitzi* court reached the same conclusion the Court reaches here—that an ALJ need not explicitly incorporate a 6-hour standing, walking, or sitting limitation into a claimant's RFC if the RFC limits the claimant to an exertional category of work that "generally" totals about 6 hours of an 8-hour workday.

Therefore, any error in not explicitly limiting Plaintiff to six hours of sitting in the RFC is harmless because Plaintiff's past relevant work is sedentary, which encompasses the applicable sitting limitation.

### E.   Vocational Expert Hypothetical was Proper

In Plaintiff's June 1, 2019, Work History Report, he stated that, in his most recent job as an Information Security Analyst, he walked for 1 hour a day, stood for 1 hour a day, sat for 7 hours a day, and wrote, typed, or handled small objects for 7 hours a day. AR 258. He stated that he spent no time climbing, stooping, kneeling, crouching, crawling, reaching, or handling, grabbing, or grasping big objects. AR 258. He stated that the heaviest item lifted at work was 20 pounds, and noted that he frequently lifted items weighing 10 pounds. AR 258. In the RFC, the ALJ limited Plaintiff to frequent handling and fingering with bilateral hands, and no forceful gripping, grasping, or torquing. AR 35. During the administrative hearing, the ALJ asked the Vocational Expert:

Q: Can you characterize his prior work for us?

A: He was an information security specialist, 033.162-010, skilled at SVP 8, classified as sedentary and performed as sedentary, sir.

Q: For hypothetical one, assume a hypothetical individual of the claimant's same age, education, and work experience. And further assume that he can do light work but with only occasionally overhead reaching bilaterally. No climbing of ladders, ropes, or scaffolds, or crawling. But he can occasionally perform all other postural activities. He can frequently bilaterally handle and finger but he can do no forceful gripping, grasping, or torqueing and he must avoid concentrated exposure to hazards such as unprotected heights or dangerous moving machinery. …

A: … Your Honor, there is no reason why that job could not be performed, that could be performed.

Q: Okay. So, it's only frequent handling, fingering, and feeling per the DOT.[7]

A: That's what I was checking, Your Honor. It doesn't go, it doesn't go beyond frequent.

Q: Frequent handle, finger, feel. Okay, now the DOT does not cover forceful gripping, grasping, or torqueing [] nor does it cover directional reaching like overhead. So, for those aspects of your testimony are you relying on professional knowledge and experience?

A: I am, sir, 40+ years experience doing job analyses.

AR 135–36. Though the vocational expert does not use the phrases "as actually performed" or "as it is generally performed," he used his forty years of experience completing job analyses and the DOT to answer about the job as generally performed. *See* 20 C.F.R. § 404.1560(b)(2); *see cf. Mitzi D*., 2019 WL 8112507, at *2 (vocational experts and ALJs presumably understand what long-standing definitions and SSR interpretations are, including light work).

Given its prior finding that the RFC is supported by substantial evidence, the Court finds that the hypothetical posed to the Vocational Expert, as well as the finding that Plaintiff could perform his past relevant work as generally performed, which includes occasional handling and frequent fingering, is supported by substantial evidence. *See Pinto*, 249 F.3d at 845 (Plaintiff must be able to perform either the "actual functional demands and job duties of a particular past relevant job; *or* [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy.") (quoting SSR 82-61, 1982 WL 31387, at *2 (1982)) (emphasis in original); *Lake v. Kijakazi*, No. 2:21-cv-1089-EJY, 2022 WL 855975, at *4 (D. Nev. Mar. 23, 2022) (ALJ did not err in not asking the vocational expert a hypothetical about plaintiff's job as actually

---

[7] The DOT states that an information security specialist engages in "[h]andling: [o]ccasionally – [e]xists up to 1/3 of the time; [and] [f]ingering: [f]requently – [e]xists from 1/3 to 2/3 of the time." DOT 033.162-010, 1991 WL 646561 (1991). Therefore, as generally performed, an information security specialist would handle for up to 2.6 hours and finger for 2.6-5.2 hours.

performed, which plaintiff was unable to perform and was different than it was generally performed, because the ALJ is not required to make findings as to both).

## V.   WHETHER THE ALJ PROPERLY CONSIDERED PLAINTIFF'S PAIN AND LIMITATION TESTIMONY ABOUT HIS HANDS

The second issue presented by Plaintiff for appeal is whether the ALJ properly considered Plaintiff's pain and limitation testimony about his hands. ECF No. 17 at 4.

### A.   Parties' Positions

Plaintiff argues that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's pain and limitation testimony about his hands when conferring a limitation of frequent handling and fingering and no forceful gripping, grasping, or torquing. ECF No. 17 at 27–28. The ALJ found that Plaintiff's hand pain and limitation testimony was inconsistent with his lay off in February 2016, where he stopped working for reasons unrelated to his disability, his subsequent return to college full time with a 3.98-4.0 GPA, and because "there is little, if any, evidence of significant worsening of these [hand] issues after his successful work and college." *Id*. at 28 (quoting AR 37). Plaintiff argues that there is evidence in the record that his hand impairments deteriorated in 2018. ECF No. 17 at 29. Plaintiff argues that the ALJ should have adjudicated two separate periods of time due to the change in his condition: (1) from Plaintiff's alleged onset date in February 2016 through 2017, and (2) 2018 through the present. *Id*. at 32. Therefore, Plaintiff argues that the ALJ did not give clear and convincing evidence for the second time period. *Id*. at 32–33.

Defendant argues that the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony, including the ALJ's finding that Plaintiff's ability to graduate from college in a field that requires substantial typing and use of hands is inconsistent with that testimony. *Id*. at 36. Defendant also points to medical records, such as an MRI, x-ray, treatment notes, and testing completed after 2018 as inconsistent with Plaintiff's testimony regarding extreme hand issues, because the findings were mild and Plaintiff was provided conservative care. *Id*. at 37–38. Defendant also contends that the RFC provided for

substantial limitations that incorporated a considerable number of Plaintiff's allegations. *Id*. at 35.

### B.   Legal Standard

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. *Id*. (citing *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. *Trevizo*, 871 F.3d at 678 (citation omitted); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."); *Smolen*, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."). When rejecting testimony, the ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error where the ALJ "failed to identify the testimony she found not credible"); *Smolen*, 80 F.3d at 1284 ("[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion").

The ALJ shall determine whether to credit a claimant's statements about pain and limitations by referring to the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which include: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication

taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2017 WL 5180304, at *3 (2016). However, the lack of objective medical evidence supporting a claimant's allegations cannot provide the sole basis for rejecting his statements about the severity of his symptoms and limitations. *Id*.; *see also Trevizo*, 871 F.3d at 679; 20 C.F.R. § 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements").

The ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); *see Brown-Hunter*, 806 F.3d at 493 ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

## B. Plaintiff's Hand Pain and Limitation Statements

Plaintiff has been diagnosed with mild issues with his hands, with some test results being normal. *E.g.*, AR 326, 927 ("bilateral radial and ulnar sensory nerve conduction studies," "bilateral radial and ulnar motor nerve conduction studies," and "bilateral EMG studies" were normal); 441, 623 ("mobility was not limited" and the "strength of the upper extremities was normal [and] no lower extremity weakness was observed"); 682 (x-rays revealed mild issues on both hands); 955 (finger approximation was intact, Plaintiff was able to make a fist, no deficits in finger movement). Plaintiff's physicians have consistently

recommended conservative treatment for Plaintiff's CTS and hand pain. *E.g.*, AR 681–683, 690 (wrist splints, orthotic training, moist heat mitts, active gloves, home exercises); 684 (wrist splints); 924–25 (wrist splints); 940 (stretching, over-the-counter medication, wrist splints); 944 (over-the-counter medication, wrist splints); 985–86 (lidocaine patches, compression gloves). The record shows that the conservative treatments were helping, since Plaintiff often reported that using a wrist brace helped with his hand pain. AR 682 (Jan 23, 2019); AR 923 (Apr. 3, 2019); AR 938 (June 5, 2019); AR 942 (Sept. 12, 2019); *see* AR 74 (Aug. 5, 2020, complaining of more hand pain and conceding that "he only wore wrist braces occasionally").

On January 23, 2019, Plaintiff complained of a decade of hand and arm pain with a pain rating between 6/10 at rest and 8/10 when in use that he described as "constant stabbing, numbness, tingling, burning, sharp aching, cramping, and stiffness [that is] worse in morning and affect[s] sleep." AR 682; *see also* AR 923, 938, 942 (from April to September, 2019, Plaintiff reported that he had wrist pain "for many years"); AR 130–31 (Plaintiff's testimony at the hearing, stating that he did not work after completing school in 2017-2018 because he had "issues with my hand"). However, during that same time frame, Plaintiff repeatedly reported that he was not "limited in routine[8] activities because of any impairment or health problem[.]" AR 484–85 (April 30, 2015); AR 475–76 (Dec. 2, 2015); AR 461–62 (May 26, 2016); AR 445, 448–49, 630 (July 17, 2017); AR 439–40, 621–22 (Aug. 28, 2017); AR 430–31, 612 (Nov. 15, 2017); AR 417, 598 (Jan. 31, 2018); AR 402 (Mar. 19, 2019); AR 388, 569 (Apr. 8, 2019). Plaintiff reported "good general overall feeling/health." AR 484–85 (April 30, 2015); AR 461–62 (May 26, 2016); AR 445, 448–49 (July 17, 2017); AR 430–31, 612 (Nov. 15, 2017). Plaintiff often rated his pain as "0/10." AR 461–62 (May 26, 2016); AR 430–31, 612 (Nov. 15, 2017); AR 388, 569 (Apr.

---

[8] Based on Plaintiff's testimony about his prior work and studies, typing would be a routine activity. For example, on April 3, 2019, Plaintiff reported that he "did lots of typing while doing data processing." AR 923.

8, 2019). Of note, Plaintiff's September 9, 2019, Disability Appeal Report, lists a myriad of his symptoms in detail, but does not mention anything about hand pain. AR 264; *see* AR 942 (on September 12, 2019, Plaintiff reported to Dr. Balfour that, for many years, his hand pain radiated and was associated with "numbness in digits and weakness in grip").

There is also evidence in the record that Plaintiff did not take medication for his pain, which is inconsistent with his claims regarding the severity of the pain and its alleged worsening. For example, on May 20, 2019, Plaintiff stated that he was not taking any prescription or non-prescription medications, AR 249, although the prior month, Dr. Balfour had stated that Plaintiff could take over the counter NSAIDs for hand pain relief, if needed. AR 925. On September 9, 2019, Plaintiff reported that, as of July 2019, he is not "currently taking any medications (prescription or non-prescription)," AR 266, although the prior month, Dr. Balfour had stated that Plaintiff could take over the counter NSAIDs for hand pain relief, if needed. AR 944. In Plaintiff's March 17, 2020, Disability Appeal Report, Plaintiff reported that he is not "currently taking any medications (prescription or non-prescription)," AR 276, although the prior month, Nurse Practitioner Joanne Jacalan had stated that Plaintiff could take over the counter NSAIDs for his hand pain relief, if needed, AR 985–86.

At the hearing, Plaintiff testified that he needed hand limitations regarding typing, picking up items, and the weight of the items. AR 133–34. Plaintiff also testified that he can type slowly and his right index finger is stiff, noting that he would need a break every 40-minutes to an hour, lasting 30-40 minutes. AR 134. Despite all the inconsistencies[9]

---

[9] The Court notes that in his first ground for appeal, Plaintiff represented to the Court that the ALJ should have adopted all aspects of Dr. Balfour's, Dr. Michelotti's, and Dr. Laiken's opinions since he found them persuasive, and any deviance should be considered a rejection. Dr. Michelotti's and Dr. Laiken's opinions both expressly state that "claimant's allegations are partially credible as the evidence in file does establish the existence of impairment. However, it is not to the severity level alleged." AR 144, 160.

3:21-cv-00613-AHG

mentioned above, the ALJ did consider these limitations in formulating the RFC, which limited Plaintiff to frequently handling and fingering with the bilateral hands, and no forceful gripping, grasping, or torquing. AR 35.

### C.   Discussion

Here, the ALJ gave the following reasons for discounting Plaintiff's subjective symptom statements and testimony: (1) Plaintiff's statements about the intensity, persistence, and limiting effects "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," and (2) "Plaintiff's activities of daily living were inconsistent with the claimant's statements concerning the alleged intensity, persistence, and limited effects of symptoms." AR 36, 40.

Relating to the first reason, although it can be inferred that the conservative treatments repeatedly mentioned are what the ALJ is referring to, the Ninth Circuit has rejected this language as not sufficiently clear and convincing. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) ("The ALJ noted generically that 'the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the objective medical and other evidence for the reasons explained in this decision.' But this boilerplate statement by way of introductory remark, which is routinely included in ALJ decisions denying benefits, did not identify what parts of the claimant's testimony were not credible and why."); *see Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1103 (9th Cir. 2014) (same).

Relating to the second reason, the ALJ did provide clear and convincing reasons. The ALJ found that Plaintiff's ability to pursue his Bachelor's degree in computer science full-time until May 2017, for about 1 year about being laid off, and maintaining a GPA of 3.98 or 4.0, was inconsistent with his subjective symptom statements of "not look[ing] for work since finishing college because he has issues with his hands," i.e., being able to "type, but that his right index finger is stiff and that he has to take a [30 minute to 1 hour] break after 40-45 minutes or up to 1 hour of typing." AR 36, 40. The ALJ pointed to the record, where, in May 2018, Plaintiff reported to a VA provider "that he had another 6 months to

use on the G.I. bill, which he was planning to use, but that he was not enrolled at that time." AR 36; *see* AR 771 (On May 17, 2018, Dr. Misa Hidaka reported that, "[a]fter military, he worked in IT until 2/2016, when he was laid off. He also attended school completing his Bachelors degree in computer science. He has another 6 mo[nth]s to use on the GI bill, and plans to use that, but not currently enrolled."). The ALJ also explained that "there is little, if any, evidence of significant worsening of these issues after his successful work and college." AR 37 (noting Dr. Balfour's conservative treatment recommendations in 2019 of wrist splints or a possible steroid injection).

The Court finds that these reasons are sufficiently specific and are supported by substantial evidence. The ALJ reasonably found Plaintiff's ability to complete full-time college courses with exemplary marks in a field that necessarily requires substantial typing and use of hands, during the period he alleged he was disabled, was inconsistent with his allegations of severe problems using his hands. The ALJ's conclusion that Plaintiff's statements were inconsistent—i.e., he alleged worsening of symptoms when there is not evidence of such—is supported by substantial evidence. *See, e.g.*, AR 484–85, 475–76, 461–62, 445, 448–49, 630, 439–40, 621–22, 430–31, 612, 417, 598, 402, 388, 569 (consistently stating he was not "limited in routine activities because of any impairment or health problem" between 2015 and 2019). Further, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra*, 481 F.3d at 750; *see* AR 37 (ALJ specifically mentioning Dr. Balfour's conservative treatment measures upon diagnosis of cervical radiculopathy and bilateral CTS as inconsistent with Plaintiff's testimony that his symptoms worsened).

Even if the ALJ did err here, it would be harmless. First, the ALJ assigned an RFC that provided for substantial limitations and incorporated a considerable number of Plaintiff's allegations. These limitations included a restriction to a significantly curtailed range of exertionally "light" work with significant limitations in reaching, handling, and fingering, as well as a total preclusion of forceful gripping, grasping, and torquing. AR 35.

While the ALJ did not adopt the totality of Plaintiff's allegations as restrictions within the RFC, he has heavily incorporated many of those allegations.

Second, even though the ALJ's first reason for discrediting Plaintiff's hand pain and limitation statements was impermissibly boilerplate, the ALJ's second reason was sufficiently specific, clear and convincing to render the error "harmless, because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson*, 359 F.3d at 1195–97); *Mukhtar Sou v. Berryhill*, No. C18-5165-RSM, 2018 WL 4205064, at *2 (W.D. Wash. Sept. 4, 2018) (explaining that even though one of the three reasons given by the ALJ for rejecting plaintiff's testimony as not credible was an impermissible abuse of discretion, the error was harmless because one of the reasons given was permissible, and "the court does not need to uphold every reason provided for discrediting a claimant as long as the remaining reasons are valid."). Here, there is ample substantial evidence in the record to support the ALJ's ultimate credibility determination.

## VI.   <u>CONCLUSION</u>

For the reasons set forth above, pursuant to sentence four of 42 U.S.C. § 405(g), **IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**.


**IT IS SO ORDERED**.

Dated:  September 30, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge